**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**ERIC WILIM,** individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

**THE HILLSHIRE BRANDS COMPANY** and **TYSON FOODS, INC.**

*Defendants*.

Case No.: 1:25-cv-12281

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Eric Wilim, ("Plaintiff") brings this Class Action Complaint against Defendants The Hillshire Brands Company ("Hillshire") and Tyson Foods, Inc. ("Tyson"), (collectively, "Defendants") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## PARTIES, JURISDICTION & VENUE

1. Plaintiff Eric Wilim is a resident citizen of the State of Illinois. Plaintiff is a purchaser of The Hillshire Brands Company's Corn Dogs.

2. Defendant, The Hillshire Brands Company is incorporated in Texas and maintains facilities in Haltom City, Texas, among other locations. Hillshire operates multiple processing and manufacturing facilities across the United States producing meat products like corn dog, sausages, breakfast meats, hot dogs, deli meat, etc.

3. Defendant, Tyson Foods, Inc. is a Delaware corporation with its principal place of business in Springdale, Arkansas. Tyson one of the largest producers of meat and prepared foods.

4. On August 28, 2014, Tyson Foods, Inc. announced the completion of its merger with The Hillshire Brands Company[1]. Following the acquisition, Hillshire became a wholly owned subsidiary of Tyson and was integrated into Tyson's prepared foods segment.

5. Although Hillshire maintains its corporate form it is operated, managed, and controlled by Tyson. Tyson is in charge of directing Hillshire's policies, oversee its facilities, and benefits from sales of Hillshire- branded products, including those at issue in this case[2].

6. At all times relevant, Tyson and Hillshire acted jointly in the design, manufacture, marketing, and sale of the recalled products described herein.

7. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendant.

8. This Court has personal jurisdiction over Defendants under 28 USCS § 1391 because Defendants conduct substantial business in the United States, including the manufacture, marketing, distribution, and sale of the corn dog and sausage products that are the subject of this action.

[1] https://ir.tyson.com/news/news-details/2014/Tyson-Foods-and-Hillshire-Brands-Complete-Merger/default.aspx (last accessed on October 2, 2025)

[2] Tyson Foods, Inc., *Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934* (Form 10-Q), Prepared Foods Segment Disclosure, stating: "Prepared Foods includes our operations related to manufacturing and marketing frozen and refrigerated food products and logistics operation to move products through the supply chain. This segment includes brands such as Jimmy Dean®, **Hillshire Farm®,** Ball Park®, Wright®, State Fair®, as well as artisanal brands Aidells® and Gallo Salame® (emphasis added).

9. Venue is proper under 28 U.S.C §1391 because Defendant Hillshire maintains facilities in this District, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including the distribution and sale of the recalled products and Defendants have sufficient contacts with this District such that the exercise of jurisdiction is reasonable and just.

## FACTUAL ALLEGATIONS

10. On September 27, 2025, the U.S. Department of Agriculture's Food Safety Inspection Service ("FSIS") announced that Defendant Hillshire Brands Company was recalling approximately 58,000,000 pounds of corn dog and sausage on a stick product[3] (See Exhibit A for a complete list of products part of the recall).

11. The brands subject to recall are "State Fair" and "Jimmy Dean". The Defendant's name appears on the packaging as the manufacturer of the products.

12. FSIS stated that the recalled products were potentially contaminated with extraneous material, specifically pieces of wood embedded in the batter[4].

13. The recalled products were manufactured and packaged between March 17, 2025, and September 26, 2025. A list of impacted products and product labels was published by FSIS and Hillshire in connection with the recall.[5]

14. The recalled products' establishment numbers "EST-582" or "P-894" and were sold nationwide through retail outlets, food service distributors, online channels, and were also distributed to schools and Department of Defense facilities[6].

[3] https://www.fsis.usda.gov/recalls-alerts/hillshire-brands-company-recalls-corn-dog-and-sausage-a-stick-products-due-possible (last accessed on October 2, 2025)
[4] Id.
[5] Id.
[6] Id.

15. FSIS reported that the recall was initiated after Hillshire received multiple consumer complaints, at least five of which involved injuries. Hillshire's investigation determined that wooden sticks had entered the production process prior to battering, resulting in the contamination[7].

16. FSIS expressed concern that recalled products remain in consumer homes, schools, and institutions, and has warned consumers not to consume the affected products but to discard or return them[8].

17. Plaintiff is a resident citizen of Illinois who purchased one of the recalled products, specifically Hillshire pancake sausages on a stick, bearing establishment number EST-582, from a Jewel-Osco store in Illinois in or about August 2025.

18. Plaintiff did not discover any wood pieces in the portion of the product consumed, but nevertheless was forced to purchase, store, and ingest a product that has now been declared adulterated, unsafe, and unfit for human consumption by federal regulators. The product Plaintiff purchased and consumed, like all recall products, either contained or was at risk of containing foreign objects unfit for human consumption.

19. As a result of Defendant's conduct, Plaintiff and the Putative Class Members suffered economic loss, including but not limited to the purchase price of the recalled products, and have been deprived of the benefit of their bargain. No consumer would purchase the products knowing they contained or were at risk of containing foreign objects that ordinarily should not be consumed.

[7] Id.
[8] Id.

20. The contamination of the recalled products was sufficiently widespread as to possibly affect any given unit of the recalled products, including the product purchased by Plaintiff.

21. Given the scale of the recall and the inherent impossibility for an individual consumer to determine whether their particular product was contaminated, every unit subject to recall, including Plaintiff's purchase, was plausibly affected by the defect.

22. As a result, the economic benefit Plaintiff and Class Members received was less than the price they paid for the recalled products. Plaintiff and Class Members purchased food products represented as fit for human consumption. Instead, they received adulterated, unsafe, and worthless products that should be discarded, offering no value or benefit relative to their purchase price.

23. Plaintiff and Class Members suffered economic loss because they paid for products that had no value, resulting in a total failure of consideration and loss of the benefit of the bargain.

24. Defendants failed to adequately design, manufacture, test, inspect, and monitor the production process of the recalled products, allowing contaminated food to enter the stream of commerce on a massive scale.

25. Defendants also failed to warn consumers in a timely and adequate manner, instead allowing adulterated products to remain on shelves and in consumer homes for months before a recall was announced.

26. Defendant's recall, standing alone, is an insufficient remedy.

27. First, to obtain a refund, a consumer must return the product to the place of purchase. And to do so, a consumer must retain the products. But most consumers either consumed the product, thew it away, or did not keep the packaging. So, the recall is deliberately designed to preclude the vast majority of consumers from receiving a refund.

28. Second, Defendants are aware that most consumers purchase the products at multiple locations and do not maintain receipts for consumable goods. As such, most consumers cannot receive refunds at the location of purchase.

29. Third, notice of the recall was not specifically targeted to reach customers of the products. Unlike class notice (which is designed to reach the majority of class members), Defendants have not conducted a widespread advertising campaign or provided direct notice to known purchasers.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action on behalf of himself and as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

> **All persons within the United States who purchased Hillshire corn dog or sausage on a stick product that were subject to the September 27, 2025, recall (including products bearing establishment numbers "EST-582" or "P-894" manufactured and packaged between March 17, 2025, and September 26, 2025)**.

31. This Nationwide Class shall be referred to herein as the "Class."

32. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

33. Excluded from the Class are Defendants, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

34. The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendants

or its affiliates and agents and from major retail sellers.

35. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

36. The proposed Class is so numerous that the joinder of all members is impracticable.

37. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

38. **Numerosity: Fed. R. Civ. P. 23(a)(1)** – Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown currently, such information is in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process. Nevertheless, the numerosity of the class is such that it is capable of purchasing 58,000,000 pounds of the recalled food products.

39. **Typicality: Fed R. Civ. P. 23(a)(3)** – Plaintiff's claims are typical of the claims of the members of the Class, because, inter alia, all Class Members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiff's claims are typical of the Class Members' claims because Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

40. **Adequacy: Fed. R. Civ. P. 23(a)(4)** – Plaintiff will fairly and adequately protect the interest of the members of the Class. Plaintiff and the members of the Class were all

consumers of a defective product posing a hazard of possibly consuming a foreign object by eating the recalled products. Plaintiff will fairly and adequately represent and protect the interest of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no antagonistic interest to those of the Class, and Defendant has no defenses unique to Plaintiff.

41. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** – A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiff and Class Members. There are questions of law and fact common to all Class Members that predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

42. Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described. Unless a Class is certified,

Defendants will be allowed to profit from their unfair and unlawful practices, while Plaintiff and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Defendants may continue to benefit from these alleged violations, and the members of the Class may continue to be unfairly treated making final injunctive relief appropriate with respect to the Class as a whole.

43. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** – This action involves questions of law and fact common to the Classes. The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendants manufactured, marketed, and sold food products that were contaminated with foreign materials, specifically wood pieces embedded in the batter;
b. Whether the recalled products were manufactured defectively or otherwise unreasonably dangerous for their intended use;
c. Whether Defendants knew or should have known of the risk of contamination in their products;
d. Whether Defendants failed to exercise reasonable care in the design, manufacturing, testing, marketing, and distribution of the recalled products;
e. Whether Defendants violated federal or state consumer protection statutes and food safety laws by distributing adulterated or contaminated products into interstate commerce;
f. Whether Defendants' acts and omissions constitute breaches of express and/or implied warranties;
g. Whether Defendants were unjustly enriched by the sale of the recalled products;
h. Whether Plaintiff and Class Members are entitled to damages, restitution, disgorgement, or other relief;
i. Whether Plaintiff and Class Members are entitled to injunctive and declaratory relief, including enhanced safety testing, consumer warnings, and recall remedies; and.

j. The appropriate measure of damages or restitution owed to Plaintiff and Class Members.

## CAUSES OF ACTION

## COUNT I

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

44. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

45. According to 810 ILCS 5/2-314 and UCC § 2-314(1), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

46. According to the USDA Recall, pieces of wood were embedded in the batter of the recalled food products making the food contaminated and defective at the time of sale.

47. Defendants are merchants and were at all relevant times involved in the distributing, warranting, and/or selling of the contaminated pounds of corn dog and sausage on a stick products.

48. The recalled products are "goods" under the relevant laws, and Defendants knew or had reason to know of the specific use for which the recalled products, as goods, were purchased.

49. Defendants entered into agreements with consumers to sell corn dog and sausage on a stick product to be consumed by Plaintiff and Class Members.

50. The implied warranty of merchantability was included with the sale of each recalled product, which means that Defendants guaranteed that these products would be fit for the ordinary purposes for which corn dog and sausage on a stick product are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiff, and the Class Members.

51. Defendants breached the implied warranty of merchantability because the recalled products are not fit for their ordinary purpose of providing safe to eat products. According to the

FSIS Recall Notice, the products might be contaminated with foreign materials, specifically pieces of wood embedded in the batter, and should not be consumed.

52. Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendants' warranties and sales. Defendants' warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

53. More specifically, under Illinois law, privity of contract is not essential in an action for breach of implied warranty in the sale of food. *Suvada v. White Motor Co* 32 Ill. 2d 612 (1965) *citing Tiffin* v. *Great Atlantic and Pacific Tea Co.* 18 Ill.2d 48.

54. Defendants have sufficient notice of their breaches of implied warranties associated with the recalled products through their review of consumer complaints as well as their own recall.

55. Had Plaintiff, Class Members, known about this defect, they would have not purchased them and, instead, would have purchased a similar product from a competitor or they would have paid less.

56. As a direct and proximate result of the foregoing, Plaintiff and the Class suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

57. Plaintiff suffered injury in that he purchased a product that is not fit for human consumption due to an unreasonably high probability of contamination with a foreign material in the products batter.

58. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

**COUNT II**

**UNJUST ENRICHMENT**

59. Plaintiff incorporates the allegations set forth in the previous aforementioned paragraphs as though set forth fully herein.

60. Plaintiff pleads the equitable remedy of "unjust enrichment" or "restitution" as an alternative remedy should the Court deem there was no contract between the Plaintiff and Defendants. First *Midwest bank v. Cobo*, 2017 Il App.(1st) 170872.

61. Defendants should not be able to retain monies received for selling Plaintiff and Class Members food products in which there is an unreasonably high risk of finding wood in the products because wood was found inside the batter used to make the corn dogs.

62. Plaintiff, and the other members of the Class, conferred a monetary benefit upon Defendants by purchasing the potentially contaminated recalled products. These payments were not gifts or donations but were made in exchange for products that were falsely represented as safe, reliable and made for human consumption.

63. The Defendants voluntarily accepted and retained these benefits. Defendants manufactured, marketed and the contaminated foods without adequate warnings of the known defect.

64. The benefit was obtained unlawfully by Defendants distributing products not fit for human consumption. Retaining these profits without disclosing the defect or refunding consumers is unjust and inequitable.

65. Defendants received revenues from the sales of these contaminated products at the expense of Plaintiff and the Class, who would not have purchased the corn dog and sausage on a stick products had they been aware of risk of contamination.

66. Defendants have been unjustly enriched by retaining the revenues derived from the sales of the potentially contaminated products. Retention of these revenues is inequitable because Defendants failed to disclose the known risks associated with their products, thereby misleading consumers and endangering their safety.

67. Plaintiff and the members of the Class seek restitution of the monies conferred upon Defendants as a result of their unjust enrichment. Defendants should be required to disgorge the profits obtained from the sale of potentially contaminated products and provide restitution to Plaintiffs and the Classes, as ordered by the Court.

## DEMAND OF TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Class alleged herein, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A. For an order certifying the Class and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

B. For an order declaring that Defendants' conduct violates the causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper;

H. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I. For an order providing for all other such equitable relief as may be just and proper.

Dated: October 7, 2025

Respectfully Submitted,

*/s/ Gary M. Kilinger*
Gary M. Klinger (IL Bar No. 6303726)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
Email: gklinger@milberg.com

-AND-

Paul J. Doolittle, Esq. (*pro hac vice forthcoming*)
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: paul.doolittle@poulinwilley.com
cmad@poulinwilley.com

*Attorneys for Plaintiff and the Proposed Class*